proximation. Justice, nevertheless, requires that the injury shall be redressed, and the objection to uncertainty comes with bad grace from one whose wrongful act has rendered an ascertainment of the loss necessary. Had the libellant here entered upon a minute inquiry into all the circumstances, and based a calculation upon the supposed extent of the vessel's net earnings, it is not probable that a safer result could have been reached. The rule adopted by the commissioner has been pronounced by those having the largest experience and the highest intelligence on the subject the safest, under general circumstances, that can be pursued. Why, therefore, should it not be treated as sufficient in the first instance, leaving to the respondent the fullest opportunity of showing all special circumstances tending to prove that the rate thus indicated is too high in his case? The Hermann [Case No. 6,408] is not in point, though the language of the judge, as reported, is not without interest. Still, I do not find any thing in the case to shake the conclusion stated.

The exceptions must be dismissed, and the report confirmed. Decree accordingly.

[On appeal to the circuit court, the decree of the district court was affirmed. 4 Fed. 337.]

---

## Case No. 11,619b.
### The REBECCA v. The AMERICA.
[See 4 Fed. 337.]

---

REBECCA, The (MILLER v.). See Case No. 9,587.

---

## Case No. 11,620.
### REBECCA et al. v. PUMPHREY.
[2 Cranch, C. C. 514.] [1]
Circuit Court, District of Columbia. Dec. Term, 1824.

SLAVERY—PETITION FOR FREEDOM— INJUNCTION— ATTEMPT TO REMOVE—HELD BY MARSHAL—COSTS.

Upon a petition for freedom, suggesting an apprehension that the defendant will sell and remove the petitioners from the jurisdiction of the court, supported by affidavit, a judge of this court. in vacation, will order an injunction without security; and upon further affidavit that the defendant had attempted to carry the petitioners away after notice of the filing of their petition, the judge will order the marshal to take them into his custody for safe keeping until the defendant shall give the security required by law for their forthcoming to prosecute their petition; and if the defendant shall refuse to give such security, and if judgment shall be rendered against him, the marshal's fees for keeping them shall be taxed in the bill of costs against the defendant.

Petition for freedom. The petition stated that the said [negro] Rebecca and her three children, William, Ann, and Margarett, are entitled to their freedom, but are held in slavery and bondage by a certain Lloyd Pumphrey; she therefore prays for a subpoena

to him, commanding him to appear and answer the petition. "She, also, having reason to apprehend a sale and removal immediately from the jurisdiction of your honorable court, prays a writ of injunction, enjoining and forbidding the said Lloyd and his agents from removing her and her children as aforesaid; hoping such other relief as may be meet in the premises; thus ever prays. Thomas Turner, Solicitor for Petitioners."

"District of Columbia, Alexandria county— ss.: On this 24th of November, 1824, personally appears before me, justice of peace in and for the county aforesaid, Thomas Turner, and makes oath on the holy evangels of Almighty God that he believes that Lloyd Pumphrey meditates the sale and removal from the District of the within named petitioner and children, as stated in the petition. Sworn before me, Jacob Morgan. Let an injunction issue as prayed. B. Thruston. William Brent, Esq. Clerk, &c., &c., 25th November, 1824."

Afterwards, upon an affidavit that the defendant had attempted to carry the petitioners away, after notice of their having filed their petition for freedom, the judge, upon the urgency of the case, directed the marshal to take them into custody. The defendant refused to give the security required by law for the forthcoming of the petitioners to prosecute their petition, and they were kept in prison until the trial, viz. from November 26, 1824, to January 8th, 1825, forty-four days, at an expense of thirty-four cents a day for each, and one dollar each for commitment and release; making $63.84. Verdict for the petitioners.

THE COURT, on the motion of Mr. Turner, ordered this expense to be taxed in the bill of costs against the defendant.

Mr. Turner, for petitioners.

Mr. Marbury and R. S. Coxe, for defendant.

---

## Case No. 11,621.
### The REBECCA CLYDE.
[5 Ben. 98.] [1]
District Court, S. D. New York. April, 1871.

SALVAGE—TOWED INTO PORT— DAMAGE — LOSS OF TIME—PILOTAGE.

The steamship Rebecca Clyde, while on a voyage from Wilmington to New York, was struck by a heavy gale in the evening, in which she shipped seas which carried away her smokestack, shifted her boiler, carried away part of her house, stove in a port, and carried away part of her steering gear. In consequence of this, her mainmast and her foreyard were carried away, but some sail was got on her, and the steering gear was repaired. The next morning the gale had gone down, and about 10 o'clock the steamer Norman, bound from Boston to Philadelphia. called by a flag of distress, came to her. and took her in tow. and towed her to New York, reaching Quarantine about 7 p. m. When the Clyde was taken in tow, she was making no headway in any direction towards port, and was so far off shore as to be